Susan J. VOGAN and Rollin
G. Vogan, Appellees,

v.

HAYES APPRAISAL ASSOCIATES,
INC., Appellant.

No. 97–1741.

Supreme Court of Iowa.

Jan. 21, 1999.

Rehearing Denied March 12, 1999.

Robert W. Goodwin of Goodwin Law Office, P.C., Ames, for appellant.

Patrick W. O'Bryan, Des Moines, and Toby Swanson, West Des Moines, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, SNELL, and TERNUS, JJ.

CARTER, Justice.

Hayes Appraisal Associates, Inc. (Hayes Appraisal), the defendant in the district court, had been hired by MidAmerica Savings Bank (MidAmerica) to monitor the progress of new home construction for plaintiffs, Susan J. Vogan and Rollin G. Vogan. The Vogans had obtained a construction loan from MidAmerica. The contractor defaulted after all of the original construction loan proceeds and a subsequent portion of a second mortgage loan had been paid out by the bank.

The Vogans recovered judgment against Hayes Appraisal on a third-party beneficiary theory based on its alleged failure to properly monitor the progress of construction, thus allowing funds to be improperly released by the lender to the defaulting contractor. The court of appeals reversed the judgment on the basis that erroneous progress reports by Hayes Appraisal were not the cause of any loss to the Vogans. After reviewing the record and considering the arguments of the parties, we vacate the decision of the court of appeals and affirm the judgment of the district court.

In June 1989 the Vogans moved to Des Moines. They wanted to build a home in West Des Moines. They met with builder Gary Markley of Char Enterprises, Inc. Markley agreed to build the home for $169,633.59. The Vogans contacted MidAmerica for a mortgage. MidAmerica orally contracted with Hayes Appraisal to do the initial appraisal and make periodic appraisals of the progress of the construction. The home, according to the plans, and lot were appraised at $250,000.

Thereafter, the Vogans obtained a $170,000 mortgage from MidAmerica. MidAmerica was to disburse progress payments to Markley based on progress reports received from Hayes Appraisal. On November 6, 1989, the Vogans purchased the lot for $66,000 with their own funds. Construction began on November 22, 1989. On December 28, 1989, Hayes Appraisal issued a progress report to MidAmerica that twenty-five percent of the home had been completed.

There were cost overruns on the job, and in February 1990 MidAmerica determined that there was less than $2000 remaining of the $170,000 loan proceeds. Markley determined that at this point it would take another $70,000 to complete the home. The Vogans then took out a second mortgage on the home for $42,050 and turned that money plus some of their own funds over to the bank to continue making progress payments to Markley based on Hayes Appraisal's progress reports. Prior to completion of the home, the Vogans decided to sell it rather than to occupy it.

On March 20, 1990, Hayes Appraisal certified that the home was sixty percent complete. Only eight days later, Hayes Appraisal issued another progress report indicating that ninety percent of the work had been completed on the home. During the trial, witnesses testified for the Vogans that this was an inaccurate report overstating the extent of the contractor's progress on the job. As late as October 1990, substantial additional work was required on the house. At this point, Markley defaulted on the job after having been paid all of the initial $170,000 and much of the additional monies raised by the Vogans. Another contractor estimated the completion of the home would cost an additional $60,000.

The Vogans stopped making mortgage payments, and MidAmerica brought an action to foreclose the mortgage. The Vogans counterclaimed, alleging that the bank had improperly authorized payment of funds to Markley. Allegedly, MidAmerica did not follow its loan procedure for disbursement of funds. At least thirty percent of the loan amount was to be retained until completion. An undisclosed settlement was reached in the litigation between Vogans and MidAmerica.

The Vogans then filed a petition against Hayes Appraisal, contending it negligently certified the extent of the construction that had been completed. Hayes Appraisal filed a motion for summary judgment, arguing, in part, that even if the March 28, 1990 appraisal was negligently issued, it could not have proximately caused harm to the Vogans because MidAmerica had already released most of the loan funds prior to receiving the March 1990 progress reports. The court denied the motion. On reconsideration, the court again denied the motion and stated that the Vogans' claims were based upon other oral and written appraisals that lead to the disbursement of the additional money that had been raised to cover cost overruns.

The case proceeded to jury trial on a contract theory. The court denied Hayes Appraisal's motions for directed verdict in which it argued the Vogans were not third-party beneficiaries of its contract with MidAmerica and the March 1990 progress reports did not proximately cause the damages alleged. The jury returned a verdict for the Vogans. Hayes Appraisal's motion for judgment notwithstanding the verdict was denied.

Hayes Appraisal appealed. It contended the evidence was insufficient to prove the Vogans were third-party beneficiaries or that its conduct proximately caused any damage to the Vogans. It believed the trial court erred in failing to grant its motions for summary judgment, directed verdict, and judgment notwithstanding the verdict on these issues.

The court of appeals reversed. It concluded the March 1990 progress reports did not

result in any damage to the Vogans because the bank had already released more funds than recommended in those reports. The court concluded the use of the appraisal was to manage the disbursement of only the $170,000 loan, not any monies above that amount. Based upon this disposition, the court of appeals did not address the third-party beneficiary issue. We granted further review.

### I. Whether the Vogans Were Third-Party Beneficiaries of the Contract Between MidAmerica and Hayes Appraisal.

■ **A.** *Standard of review.* In assessing a motion for judgment notwithstanding the verdict, this court's only inquiry is whether there is sufficient evidence to justify submitting the case to the jury. *Tredrea v. Anesthesia & Analgesia, P.C.,* 584 N.W.2d 276, 280 (Iowa 1998). If there is substantial evidence to support a plaintiff's claims, a motion for judgment notwithstanding the verdict should be denied. *Id.* Evidence is substantial when a reasonable mind would find the evidence presented adequate to reach the same findings. *Id.* In order to avoid a defendant's motion for judgment notwithstanding the verdict, a plaintiff must present more than a "mere scintilla of evidence." *Id.* (citing *Willey v. Riley,* 541 N.W.2d 521, 526 (Iowa 1995)). This court views the evidence in the light most favorable to the party against whom the motion was made and takes into consideration every legitimate inference that may fairly and reasonably be made. Iowa R.App. P. 14(f)(2); *Willey,* 541 N.W.2d at 526.

**B.** *Arguments.* The Vogans argue that they presented ample evidence to generate a jury question concerning whether they were third-party beneficiaries of the contract between MidAmerica and Hayes Appraisal. The Vogans assert that the court should look to the intent of the parties and the surrounding circumstances and argue that the bank's intent was to protect the Vogans' money as construction progressed. The Vogans claim that Hayes Appraisal knew they were owners of the property and that they would benefit from the progress reports.

Hayes Appraisal, however, claims that the verbal contract between MidAmerica and Hayes had no provision or intent to make the Vogans third-party beneficiaries. Hayes Appraisal claims that the Vogans presented no evidence of intent on behalf of the bank to benefit the Vogans and so failed to meet their burden of proof. Hayes Appraisal argues that this failure of proof entitles them to a directed verdict or judgment notwithstanding the verdict on this issue.

■ **C.** *Analysis.* This court has adopted the following principles from the Restatement (Second) of Contracts that are applicable to third-party beneficiary cases:

"(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) *the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.*

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary."

*See Tredrea,* 584 N.W.2d at 281 (quoting Restatement (Second) of Contracts § 302 (1979)) (emphasis added); *Midwest Dredging Co. v. McAninch Corp.,* 424 N.W.2d 216, 224 (Iowa 1988) (same). This court has determined that the primary question in a third-party beneficiary case is whether the contract manifests an intent to benefit a third party. *Tredrea,* 584 N.W.2d at 281; *Midwest Dredging Co.,* 424 N.W.2d at 224. However, this intent need not be to benefit a third party directly. *Tredrea,* 584 N.W.2d at 281.

In *Tredrea* we explained

"[w]hen a contract is made, the two or more contracting parties have separate purposes; each is stimulated by various motives, some of which he may not be acutely conscious.... A third party who is not a promisee and who gave no consideration has an enforceable right by reason of a contract made by two others ... if the

promised performance will be of pecuniary benefit to [the third party] and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract."

*Id.* at 281–82 (quoting 4 Arthur Linton Corbin, *A Comprehensive Treatise on the Working Rules of Contract Law* § 776, at 15–16, 18 (1951)).  In the present case, MidAmerica is the promisee, who stands to benefit from Hayes Appraisal's performance, and Hayes Appraisal is the promisor, who agreed to provide periodic inspections to the bank.

The promised performance of Hayes Appraisal to MidAmerica will be of pecuniary benefit to the Vogans, and the contract is so expressed as to give Hayes reason to know that such benefit is contemplated by MidAmerica as one of the motivating causes of making the contract.  The inspection reports and invoices that Hayes Appraisal provided MidAmerica contained not only the location of the project, but also the Vogans' name as the home purchasers.  This information gave Hayes Appraisal reason to know that the purpose of MidAmerica obtaining the periodic progress reports from Hayes was to provide the Vogans with some protection for the money they had invested in the project.  If we apply the *Tredrea* standard to these circumstances, the Vogans qualify as third-party beneficiaries of the agreement between MidAmerica and Hayes Appraisal.

## II.  *Whether the Faulty Inspection Reports Were a Cause of Injury to the Vogans.*

The court of appeals determined that Hayes Appraisal did not cause any damage to the Vogans by reason of their faulty progress reports.  That court found that the periodic completion reports submitted by Hayes Appraisal were only for purposes of disbursement of the initial $170,000 construction loan and did not pertain to the additional funds that the Vogans deposited with the bank for periodic disbursement to the contractor.  The court of appeals concluded that the bank had already distributed the original $170,000 to the contractor prior to receiving the

March 1990 periodic progress reports from Hayes Appraisal that were deemed to be erroneous.

Susan Vogan prepared a spreadsheet, admitted into evidence, that showed both debits and credits on the Vogans' construction account, including the monies added to the original $170,000.  The Vogans testified that based on this analysis the bank disbursed a portion of the additional funds raised by the Vogans to cover cost overruns based on the March 1990 progress reports showing that the project was ninety percent completed.

Questions of proximate cause are ordinarily questions of fact that, only in exceptional cases, may be taken from the jury and decided as a matter of law.  Iowa R.App. P. 14(f)(10); *Boham v. City of Sioux City*, 567 N.W.2d 431, 435 (Iowa 1997); *Johnson v. Junkmann*, 395 N.W.2d 862, 864 (Iowa 1986).  We believe the facts that we have just detailed would permit the jury to find that the purpose of Hayes Appraisal's reports on the progress of the work was to assist the bank in disbursing all funds on deposit that were intended for application to the Vogans' home construction.  Consequently, although the initial $170,000 construction loan might have been disbursed prior to the faulty completion estimate, the erroneous reporting of the project's completion in March 1990 caused the bank to disburse other funds of the Vogans that would have been retained had the report been accurate.  Consequently, we disagree with the conclusion of the court of appeals that the jury could not have found that Hayes Appraisal's faulty progress report caused any injury to the Vogans.

## III.  *Whether the Vogans' Recovery Violates the Rule of* Hadley v. Baxendale.

Hayes Appraisal suggests that, even if its conduct could be found to be a proximate cause of injury to the Vogans, it should not be held liable for dissipation of any funds after the $170,000 construction loan had been exhausted.  It bases this argument on the rule in *Hadley v. Baxendale*, 9 Exch. 341 (1854).  In that case, the British Court of Exchequer stated:

Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i.e.*, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. *Hadley,* 9 Exch. at 344. We have approved this principle as a rule of Iowa law. *New Hampshire Ins. Co. v. Christy,* 200 N.W.2d 834, 844 (Iowa 1972); *Bremhorst v. Phillips Coal Co.,* 202 Iowa 1251, 1256, 211 N.W. 898, 902 (1927); *Snyder v. Sargeant,* 197 Iowa 475, 481, 196 N.W. 22, 26 (1923).

▬ In applying this rule to the circumstances of the present case, we are convinced that, to the extent the Vogans' recovery included sums advanced to Markley by the bank based on an inaccurate progress report from Hayes Appraisal, that element of recovery was not beyond Hayes' contemplation at the time its contract with the bank was made. If the bank had scrupulously honored its construction loan procedures and there had been no adjustments based on cost overruns, a substantial portion of the $170,000 construction loan would have been retained at the time that Hayes Appraisal inaccurately reported that the project was ninety percent completed. The portion of Vogans' recovery based on improper payments to the contractor by the bank thus did not violate the rule of *Hadley v. Baxendale.* Of course, much of the Vogans' recovery was for items of consequential damage. Hayes Appraisal has not lodged any challenge to the claims of consequential damage other than its general claim that the Vogans were not a third-party beneficiary of the bank's contract. We have previously rejected that contention.

We have considered all issues presented and conclude that the decision of the court of appeals should be vacated. We affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**